UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GAIL DINES,<br>    Plaintiff,<br><br>v.<br><br>WHEELOCK COLLEGE,<br>a corporation, JACKIE JENKINS-SCOTT, in her official and individual capacities, KATHERINE S. TAYLOR, in her official and individual capacities; and KINGSTON BAY GROUP, a limited liability corporation,<br>    Defendants. | C.A. No. 1:16-cv-11876-GAO |

### WHEELOCK DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ADMISSION OF VISITING LAWYER PRO HAC VICE

Defendants Wheelock College (the "College"), former College President Jackie Jenkins-Scott ("President Jenkins-Scott"), and current Chair of the College's Board of Trustees, Katherine S. Taylor ("Ms. Taylor"), (collectively, the "Wheelock Defendants"), by and through undersigned counsel, hereby respond in opposition to Plaintiff's Motion for Admission of Visiting Lawyer *Pro Hac Vice* (the "PHV Motion"). By that Motion, Plaintiff's Attorney, Anita Vadgama ("Attorney Vadgama") seeks permission for Ann M. Olivarius ("Attorney Olivarius") to appear *pro hac vice* as counsel for Plaintiff Gail Dines ("Dr. Dines").[1]

---

[1] Attorney Vadgama has filed lawsuits in the District of Massachusetts against the Wheelock Defendants on behalf of two other faculty members at the College, namely Eric Silverman and Joan Gallos. The *Gallos* lawsuit also named as a defendant the College's current president, David Chard ("Dr. Chard"). On the same day that Attorney Vadgama moved to admit Attorney Olivarius in this lawsuit, Attorney Vadgama also filed similar *pro hac vice* motions in those lawsuits. *See Silverman v. Wheelock College et al.*, 1:16-cv-11879-GAO, Docket No. 12; *Gallos v. Wheelock College et al.*, 1:16-cv-11884-MLW, Docket No. 7. The Wheelock Defendants and Dr. Chard oppose those motions as well.

**INTRODUCTION**

The Wheelock Defendants do not lightly undertake this opposition to Attorney Olivarius's *pro hac vice* admission to this Court. They do so to bring to the Court's attention Attorney Olivarius's repeated violation of the rules of professional responsibility and lack of candor to previous tribunals. This pattern of misconduct – compounded by Attorney Olivarius's refusal to take responsibility for her actions – threatens the efficient and just resolution of this litigation, and therefore warrants precluding Attorney Olivarius from participating in this litigation.

Attorney Olivarius may just now be seeking permission to appear before this court, but she is no stranger to the dispute between Dr. Dines and Wheelock, where she is a tenured professor. In her pre-suit representation of Dr. Dines and two of her colleagues, Attorney Olivarius improperly communicated with representatives of Wheelock <u>on at least three distinct occasions</u> despite knowing that Wheelock was represented by counsel. Those communications were not only clear violations of the attorney ethical rules, but they also constituted a blatant attempt to invade the sacrosanct relationship between Wheelock and its counsel and to sew doubt about its counsel's independence and advice. Even worse, despite multiple admonitions from Wheelock's counsel, Attorney Olivarius has refused to acknowledge her violation of the ethical rules, or even apologize for her behavior. Attorney Olivarius's persistent disregard of a fundamental ethical rule, coupled with her lack of contrition, strongly suggests that she will continue to violate the rules of professional responsibility governing practice in this Court.

Attorney Olivarius's documented misconduct in this matter, compounded by her skirting of ethical rules in previous matters, raises serious concerns about Attorney Olivarius's negative impact on the administration of the current litigation, which, judging by the tone and length of

Dr. Dines's Complaint, will be time-consuming and contentious.[2] The Wheelock Defendants therefore request that this Court exercise its broad oversight over practice before this Court to deny Attorney Olivarius the privilege of appearing *pro hac vice* in this matter.

## BRIEF BACKGROUND[3]

Dr. Dines is a tenured professor at Wheelock. *See* Complaint ("Cp."), Docket No. 1, ¶¶18, 19. Wheelock has been represented by Attorney Jeffrey Hirsch ("Attorney Hirsch") since February 2009. *See* Affidavit of Jeffrey L. Hirsch, Esq. (hereinafter "Hirsch Aff."), ¶2.

Attorney Olivarius is not admitted to the state or federal bars of Massachusetts. *See* Docket No. 11. Nonetheless, in or about August 2015, Attorney Olivarius began representing Dr. Dines and her colleagues Eric Silverman and Joan Gallos in connection with employment-related disputes with Wheelock. As set forth in detail in Section II below, during her representation of Drs. Dines, Silverman, and Gallos, Attorney Olivarius improperly communicated with Wheelock on three separate occasions despite knowing that the College was represented by Attorney Hirsch and contrary to Attorney Hirsch's admonitions that she refrain from such misconduct. *See* Hirsch Aff., ¶¶5-11.

On September 15, 2016, Attorney Vadgama, a member of the Massachusetts state and federal bars and an experienced employment lawyer,[4] filed a Complaint against the Wheelock

---

[2] Under Fed. R. Civ. P. 8(a)(2), a plaintiff's complaint must contain a "short and plain" statement of the party's claim. There is nothing "short" or "plain" about Dr. Dines's complaint. It spans 73 pages, includes 187 numbered paragraphs and dozens of subparagraphs, and it is chock-a-block full of irrelevant matter, harsh invective, and even rhetorical questions. *See*, *e.g.*, Complaint, ¶141. For this reason alone, Dr. Dines's procedurally infirm complaint is subject to dismissal. *See Schaer v. Brandeis University*, 432 Mass. 474, 477 (2000) (noting that when plaintiff's complaint included "125 paragraphs sprawling over thirty-four pages" and attachments, trial court could have dismissed complaint for failure to state "a short and plain statement of the claim").

[3] In the interest of brevity and efficiency, Defendants will set forth additional facts in the relevant sections below.

[4] According to her LinkedIn profile, Attorney Vadgama has nearly twenty years of experience as an employment lawyer in the United States and England. *See* Affidavit of Scott A. Roberts (hereinafter "Roberts Aff."), Ex. A. She holds a Master of Laws in American Law from Boston University and practiced for more than five years in Boston at the firm of Littler Mendelson. *See id*. There has been no suggestion that Attorney Vadgama is not fully qualified to represent Dr. Dines in this matter.

3

Defendants on behalf of Dr. Dines (the "Dines Action"). *See* Docket No. 1. That same day, she also filed Complaints on behalf of Dr. Silverman (the "Silverman Action") and Dr. Gallos (the "Gallos Action"). The Wheelock Defendants strongly dispute the allegations made against them in the Dines Action, and Defendants Jackie Jenkins-Scott and Katherine S. Taylor have moved for dismissal with prejudice of all of Dr. Dines's purported causes of action. *See* Docket Nos. 19-23.[5]

On October 27, 2016, despite Attorney Olivarius's previous representation to Attorney Hirsch that she would not seek admission *pro hac vice*, Attorney Vadgama moved for the *pro hac vice* admission of Attorney Olivarius in the Dines, Silverman, and Gallos Actions (the "PHV Motions"). *See* Docket No. 12. Attorney Vadgama failed, however, to engage in the pre-filing conference mandated by Local Rule 7.1 before filing the PHV Motions. In an attempt to correct that oversight, Attorney Vadgama conferred by phone with Scott Roberts, trial counsel for the Wheelock Defendants ("Attorney Roberts"), on October 31, 2016. *See* Docket No. 14. During that conference, Attorney Roberts informed Attorney Vadgama that the Wheelock Defendants intended to oppose the PHV Motions in part due to Attorney Olivarius's unauthorized and improper direct communications with Wheelock. Affidavit of Scott A. Roberts, Esq. (hereinafter "Roberts Aff."), ¶4. That same day, Attorney Vadgama replied by email to Attorney Roberts, in which she wrote as follows: "[Attorney Olivarius] has not breached Massachusetts Rules of Professional Conduct and denies reaching out *directly* to your clients." *See* Roberts Aff., Ex. B (emphasis added). As set forth in more detail below, this assertion was false.[6]

---

[5] These defendants have also filed motions to dismiss in the Silverman and Gallos Actions. *See Silverman*, *supra* at Docket Nos. 19-23; *Gallos, supra* at Docket Nos. 11-17.

[6] Attorney Vadgama's assertion that Attorney Olivarius did not "directly" reach out to a represented party suggests that Attorney Olivarius believes that it is ethically permissible to communicate with a represented party *through an intermediary*. If that is the case, she is wrong for the reasons discussed herein.

# ARGUMENT

I. **This Court Has Broad Discretion to Deny an Out-of-State Attorney's Motion for Admission *Pro Hac Vice*.**

Practice before this Court is a privilege, not a right. For that reason, this Court has broad discretion to deny an out-of-state attorney's motion for admission *pro hac vice*. *Panzardi-Alvarez v. United States,* 879 F.2d 975, 980 (1st Cir. 1989) ("Admission before the Bar traditionally has been considered primarily and initially subject to control by the admitting court and this control is subject to review only by reason of abuse of discretion or constitutional infirmities in the exercise of the control."). *See also Frazier v. Heebe,* 482 U.S. 641, 651 n. 13, (1987) (noting that "in many District Courts, the decision on whether to grant *pro hac vice* status to an out-of-state attorney is purely discretionary"). In exercising this discretion, a court may "consider the effect of the attorney's past actions (especially past ethical violations) on the administration of justice within the court," even if they are not "of the frequency or nature whereby the attorney could face disbarment proceedings." *Panzardi-Alvarez,* 879 F.2d at 980. Federal courts in this Circuit (and across the country) have recognized that it is appropriate to withhold the privilege of *pro hac vice* admission from attorneys who have engaged in unprofessional conduct. *See id.* (recognizing that a court may exercise its discretion to deny admission *pro hac vice* because of unethical conduct); *Obert v. Republic Western Ins. Co.*, 264 F. Supp. 2d 106, 118 (D.R.I. 2003) (revoking *pro hac vice* admission for failure to abide by state rules of professional conduct). *See also Metro East Black Contractors Organization, Inc. v. Illinois Dept. of Transp.*, No. 11-cv-1041-GPM, 2011 WL 6303241, at *2 (S.D.Ill. Dec. 16, 2011) (listing multiple decisions denying *pro hac vice* admission due to unethical conduct).

**II. Attorney Olivarius's Violation of Professional Rule 4.2 By Communicating with Wheelock Makes Her Unfit to Practice Before this Court.**

    A.    <u>Applicable Ethical Rules and Standards.</u>

It is a fundamental tenet of professional ethics that an attorney "shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."[7] Massachusetts Rules of Professional Conduct Rule 4.2.[8] *See also Admonition No. 03-16*, 2003 WL 22462339 (Mass. BBO 2003) (concluding that it was professional misconduct and a violation of Rule 4.2 for a lawyer to send a letter concerning the subject of representation directly to a party represented by counsel). An attorney may not circumvent the strictures of Rule 4.2 by making prohibited communication "through the acts of another." *See* Comment 4 to Massachusetts Rules of Professional Conduct Rule 4.2. In Massachusetts, "[l]awyers are subject to discipline when they … knowingly assist or induce another to [violate the Rules of Professional Conduct] or do so through the acts of another, <u>as when they request or instruct an agent to do so on the lawyer's behalf</u>." Comment 1 to Massachusetts Rules of Professional Conduct Rule 8.4 (emphasis added). As the Supreme Judicial Court has made clear, "an attorney may not delegate to another that which he himself is prohibited from doing." *In re Curry*, 450 Mass. 503, 528 (2008) (disbarring lawyer who engaged in prohibited conduct through private investigator).

---

[7]    This prohibition extends to individuals within a represented organization who have the power to "commit the organization to a position regarding the subject matter of representation" or, phrased differently, individuals "with authority to make decisions about the course of the litigation, such as when to initiate suit, and when to settle a pending case." *Messing, Rudavsky & Weliky, P.C. v. President & Fellows of Harvard Coll.*, 436 Mass. 347, 357 (2002).

[8]    Pursuant to Local Rule 83.6.1(a), this Court looks to the Massachusetts rules of professional conduct to determine the ethical requirements applicable to attorneys practicing before it. L.R. 83.6.1(a). See also *Pratt v. National R.R. Passenger Corp.*, 54 F. Supp. 2d 78, 79 (D. Mass. 1999) ("Under the Local Rules, attorneys practicing in this District must comply with the ethical requirements concerning the practice of law in the Commonwealth of Massachusetts embodied in the Massachusetts Rules of Professional Conduct.").

Rule 4.2 is intended to "preserve the mediating role of counsel on behalf of their clients and to protect clients from overreaching by counsel for adverse interests." *Pratt*, 54 F. Supp. 2d at 79. Compliance with Rule 4.2 is so critical to the fair and efficient administration of justice that the Massachusetts Appeals Court has upheld a trial judge's order denying admission *pro hac vice* to an out-of-state attorney who had merely "skated perilously close to the line" of violating the rule. *See Meschi v. Iverson,* 60 Mass. App. Ct. 678, 684 (2004). The court held that it did not matter whether the attorney's conduct *actually* violated Rule 4.2, as his conduct "raise[d] serious questions bearing adversely on whether to extend to him permission to act as Massachusetts counsel in the instant matter." *Id*. at 683, n.9. As set forth below, Attorney Olivarius did not merely skate close to the ethical line set by Rule 4.2; rather, she brazenly crossed it by communicating directly with the College's leadership on multiple occasions, in disregard of explicit admonitions from Wheelock's counsel.

B.  Attorney Olivarius Knowingly Violated Rule 4.2 on at Three Occasions.

Attorney Olivarius violated Rule 4.2 of the Massachusetts Rules of Professional Conduct by communicating directly with representatives of Wheelock <u>on at least three separate occasions</u>. The first improper communication occurred on August 4, 2015, when Attorney Olivarius wrote directly to Ms. Taylor, Chair of Wheelock's Board of Trustees, concerning ongoing negotiations about Dr. Gallos's employment.[9] *See* Hirsch Aff., Ex. A. In the letter, Dr. Olivarius acknowledged several times that she knew Attorney Hirsch was representing the

---

[9] It is beyond dispute that Attorney Olivarius was prohibited from communicating directly with Ms. Taylor who, in her role as Chair of the Board of Trustees, was an agent of the College with managerial authority for the matter at issue. *See* Comment 7 to Massachusetts Rules of Professional Responsibility Rule 4.2. *See also Messing, Rudavsky & Weliky, P.C.*, 436 Mass. at 357 (prohibition against communication with represented parties extends to individuals within a represented organization who have the power to "commit the organization to a position regarding the subject matter of representation" or "with authority to make decisions about the course of the litigation, such as when to initiate suit, and when to settle a pending case."). Had Attorney Olivarius thought that Ms. Taylor lacked that authority, she would not have attempted to improperly influence Ms. Taylor's opinion as to the College's dispute with Dr. Gallos.

7

College, once by referencing an email from Attorney Hirsch to Dr. Gallos's predecessor counsel, and once by noting her intent to seek to disqualify Attorney Hirsch as counsel for Wheelock. *See id*. at pp. 2, 3. Indeed, Attorney Olivarius posited her purported plan to seek Attorney Hirsch's disqualification as the *reason* for sending the August 4, 2015 email directly to Ms. Taylor, thereby acknowledging the unorthodox (and unethical) nature of her direct communication with a representative of Wheelock. *See id*. at p. 3.[10]

In an August 10, 2015 letter, Attorney Hirsch requested that Attorney Olivarius refrain from any further direct communication with Wheelock, including its trustees. *See* Hirsch Aff., Ex. B, p. 2. In relevant part, Attorney Hirsch wrote as follows:

> Going forward, I must insist that you respect the fundamental requirements of both the Massachusetts and New York Rules of Professional Conduct, and that you refrain from any further direct communication with my client, which obviously includes its trustees. Professional Rule 4.2 of both jurisdictions expressly prohibits a lawyer from communicating with a person whom the lawyer knows to be represented by counsel with respect to the subject of the lawyer's communication. Clearly you knew that I represent Wheelock with respect to Dr. Gallos – you affirmatively acknowledged that fact in your letter. Yet you still wrote directly to the Chair of my client's Board of Trustees in direct violation of Rule 4.2. Should you insist on litigating and intend to seek *pro hac vice* admission in the Commonwealth, the College expressly reserves all rights to challenge your application on the basis of your violation of Rule 4.2.

*Id.*

Attorney Olivarius responded to Attorney Hirsch's letter on August 13, 2015. In her response, Attorney Olivarius offered no explanation or justification for her communication with Ms. Taylor. *See* Hirsch Aff., Ex. C. Instead, she characterized Attorney Hirsch's reservation of rights as to her *pro hac vice* admission as a "threat" that was "uninformed and simply not

---

[10] Attorney Olivarius's ill-conceived attempt to justify her ethical violation by suggesting that she might seek Attorney Hirsch's disqualification at some future point does not change the unalterable fact that, at the time of her unauthorized communication, Attorney Hirsch represented Wheelock, and Attorney Olivarius knew that he represented Wheelock.

8

necessary" because a senior associate at her firm would "handle all aspects of litigation in the Commonwealth."[11] *See id*. at 2.

In the summer of 2016, Attorney Olivarius again undertook efforts to communicate directly with Wheelock and its Trustees. See Hirsch Aff., Exs. D-H. Having been rebuffed by Attorney Hirsch, however, she had her client deliver her communication to the College. *See id*., Ex. D. This time, Dr. Silverman sent an email on July 5, 2016 to members of the College's Board of Trustees, including Ms. Taylor, that included a written statement prepared by Attorney Olivarius concerning a fact-finding report conducted by the Sanghavi Law Office in connection with student complaints concerning Dr. Silverman and Dr. Dines (the "Sanghavi Report"). *See id*. Dr. Silverman attached to the email a purported "formal response" to the Sanghavi Report (the "Response"), which includes a "Statement Concerning the Sanghavi Report from Dr. Ann Olivarius" (the "Olivarius Statement"). *See* Hirsch Aff., Ex. E.

The Olivarius Statement clearly constitutes an improper attempt by Attorney Olivarius to communicate directly with College leadership. It is printed on the letterhead of Attorney Olivarius's firm, McAllister Olivarius, and is signed by Attorney Olivarius. *See* Hirsch Aff., Ex. E. That it was prepared specifically to be distributed to representatives of the College along with the Response is evidenced in its opening lines, which state as follows: "I am the lawyer representing Wheelock College professors Gail Dines and Eric Silverman, the subjects of the Sanghavi Report and the authors of the detailed Response to that Report that precedes this letter." *See id*. The Olivarius Statement goes on to offer a legal critique of the Sanghavi Report, including an assertion that the Sanghavi Report was "a powerful example of retaliation against

---

[11] According to the firm website for McAllister Olivarius, Kathleen Hallisey the senior associate who Attorney Olivarius identified in her August 13, 2015 email, is no longer at the firm. Attorney Vadgama, however, is also a senior associate at Attorney Olivarius's firm, and her LinkedIn profile reflects that she has more experience than Attorney Hallisey. *Compare* Roberts Aff., Ex. B *with* Roberts Aff., Ex. C.

9

Dr. Dines and Dr. Silverman by Wheelock – which under the anti-discrimination laws of the United States and Massachusetts is illegal." *See id.*

After learning about the Olivarius Statement, Attorney Hirsch contacted Attorney Olivarius by mail and email on July 25, 2016 to again insist that she comply with her ethical obligations with respect to communications with Wheelock. *See* Hirsch Aff., ¶9. Attorney Hirsch reminded Attorney Olivarius of his August 11, 2015 letter concerning her unauthorized communication with Mr. Taylor and expressly instructed her "not [to] communicate with any Trustees of Wheelock College or anyone employed by Wheelock College on the Institutional Leadership Team concerning the above matters without first contacting [him] and without obtaining [his] express written consent."[12] *Id*. at Ex. F, at p. 2.

Despite Attorney Hirsch's admonition, in mid-August 2016, Attorney Olivarius again arranged for her client – this time Dr. Gallos – to provide a written communication from Attorney Olivarius directly to Dr. David Chard, who recently had become President of the College. Dr. Chard had agreed to meet with Dr. Gallos on August 19, 2016 to discuss the possible resolution of her claims against the College. In their meeting, Dr. Gallos gave Dr. Chard a document titled "Jury Verdicts Informing An Analysis In [three purported lawsuits by Drs. Silverman, Dines, and Gallos]." *See* Hirsch Aff., Ex. G. The document is again on the letterhead of Attorney Olivarius's law firm and purports to set out "published verdicts similar to the fact patterns and legal issues in the three cases about to be filed … against Wheelock." *Id*. It is also marked with a heading stating "For Settlement Purposes Only." *Id*. As such, it is

---

[12] Remarkably, Attorney Olivarius denied communicating with the Board of Trustees in a July 29, 2016 email to Attorney Hirsch. *See* Hirsch Aff., Ex. H. Attorney Olivarius went on to characterize the Olivarius Statement as "an open letter accompanying [her] clients' painstaking rebuttal to the Sanghavi Report. It served as my *personal observations* of the flaws in the Report's conclusion and the true motivations of its authors." *Id*. (emphasis added). This characterization is not credible in light of the *legal* conclusions set forth in the Olivarius Statement. Nor does Attorney Olivarius explain why she would take the time to craft the statement if she did not know or intend for it to be shared with College leadership.

10

readily apparent that it was created by Attorney Olivarius *as a settlement communication with the College*, which, as Attorney Olivarius was well aware, was represented by Attorney Hirsch.[13]

There can be no debate that Attorney Olivarius's communications with the College violated Rule 4.2 of the Massachusetts Rules of Professional Responsibility.[14] These were not mere technical violations, but represented blatant premeditated attempts to invade the attorney-client relationship between Wheelock and its counsel. In light of this misconduct, Attorney Olivarius should not be afforded the privilege of practice before this Court.[15] *See Panzardi-Alvarez,* 879 F.2d at 980; *Meschi,* 60 Mass. App. Ct. at 684.

C. Attorney Olivarius Has Improperly Communicated with Represented Parties in Litigation in Other Jurisdictions.

Attorney Olivarius's improper communications with Wheelock – despite multiple demands that she refrain from such unethical conduct – appear to be part of a recurring pattern of misconduct. These issues also arose in connection with Attorney Olivarius's representation of a plaintiff in *Morrison v. University of Miami et al.*, No. 1:15-cv-23856, a matter filed in the Southern District of Florida (the "Florida Matter"). In an opposition to Attorney Olivarius's admission *pro hac vice*, the University of Miami, a defendant in the Florida Matter, detailed Attorney Olivarius's improper direct communication with a University of Miami employee in

---

[13] The purpose of the jury verdict "analysis" document was clear: Attorney Olivarius was seeking to justify her clients' extravagant settlement demands through a back-door communication to a represented party, i.e., Wheelock's president. While Attorney Olivarius's ethical violation is manifest, it is equally disturbing that the purported comparator cases that she submitted to Dr. Chard bear no rational relation to the circumstances of the cases presented by Drs. Silverman, Dines, and Gallos.

[14] In light of the documentary evidence of Attorney Olivarius's repeated communications with the College, Attorney Vadgama's assertion to Attorney Roberts that Attorney Olivarius had not breached the Massachusetts Rules of Professional Conduct reflects ignorance of those rules, an intent to obfuscate Attorney Olivarius's wrongdoing, or both. *See* Roberts Aff., Ex. A.

[15] At several points in her Complaint, Dr. Dines places the substance of Attorney Olivarius's communications with representatives of the College at issue, suggesting that those communications are likely to be material to the disposition of this matter. If that turns out to be the case, Attorney Olivarius cannot serve as both trial counsel and a witness. *See* Rule 3.7 of the Massachusetts Rules of Professional Responsibility; *Smaland Beach Ass'n, Inc. v. Genova,* 461 Mass. 214, 220 (2012) (Rule 3.7 of the Massachusetts Rules of Civil Procedure bars an attorney from acting as both trial counsel and a fact witness at trial in order to "prevent the jury as fact finder from becoming confused by the combination of the roles of attorney and witness."). The Wheelock Defendants reserve the right to move for Attorney Olivarius's disqualification pursuant to Rule 3.7 if such a motion becomes necessary.

violation of Rule 4-4.2 of the Florida Rules of Professional Conduct. *See* Roberts Aff., Ex. 8, p. 7, 9-10. That communication came just one day after Attorney Olivarius had met with counsel for the University of Miami concerning the threatened litigation, erasing any uncertainty about whether Attorney Olivarius knew that the University of Miami was represented. *See id*. at p. 6.

Ultimately, the Florida Court admitted Attorney Olivarius *pro hac vice* because Attorney Olivarius's misconduct did not rise to a level that would justify <u>disbarment</u>, which is the showing required for denial of a motion for admission *pro hac vice* in the Eleventh Circuit. *Morrison v. Univ. of Miami et al.*, No. 1:15-cv-23856, at *3, 5, 7 (S.D. Fla. Nov. 5, 2015). It must be emphasized that courts in the Eleventh Circuit have a far more limited basis for denying *pro hac vice* petitions than courts in this Circuit, which have broad discretion to "consider the effect of the attorney's past actions (especially past ethical violations) on the administration of justice within the court," even if they are not "of the frequency or nature whereby the attorney could face disbarment proceedings." *See Panzardi-Alvarez*, 879 F.2d at 980-81. It is striking, however, that the Florida Court took the opportunity to warn the parties that it would not "tolerate unprofessional and unethical behavior at any time." *Id*. at p. 7. The fact that Attorney Olivarius engaged in the exact same misconduct in connection with the current matter reflects Attorney Olivarius's unwillingness – or inability – to conform her behavior to the standards of the profession, and further warrants denial of the *pro hac vice* motion.

### III. Attorney Olivarius's Lack of Candor, Which Has Resulted in Her Suspension in Other Jurisdictions, Makes her Unfit to Practice Before this Court.

The Wheelock Defendants' concerns about Attorney Olivarius's improper communications with Wheelock – and her unjustifiable denial thereof – are compounded by Attorney Olivarius's documented lack of candor to the court. Attorney Olivarius was warned of the danger of skirting the truth at the very beginning of her career, in an extraordinary rebuke

12

from a federal judge for whom she clerked. *See* Roberts Aff., Ex. F. Attorney Olivarius apparently chose not to heed that warning, as she has repeatedly made material misrepresentations to the courts in which she has sought to practice.

In 2012, the Appellate Division of the State Supreme Court of New York found Attorney Olivarius responsible for professional misconduct and revoked her license to practice law in the state because she had "made materially false statements" and "failed to disclose material facts requested in connection with her application for admission to the New York State bar." *In re Olivarius*, 94 A.D.3d 1224, 1224 (2012). In doing so, the court accepted the findings of a referee who, after a hearing, determined the following facts:

- Attorney Olivarius had failed to include a proper employment affidavit to verify a clerkship, choosing instead to submit an affidavit written by her husband, in an "<u>effort to suppress information</u>." *Id*. (emphasis added)[16]

- Attorney Olivarius's "explanations of her terminations from two subsequent employments, a New York City investment firm and as head of a foundation in Washington, D.C., were misleading." Further, in an effort to conceal the reason for her termination from the Washington foundation, "[Olivarius] submitted the required employment affidavit from an attorney who was not an employee of the foundation, but was outside special counsel." *Id*. [17]

---

[16] Attorney Olivarius had ample reason for wanting her husband to verify her clerkship in the Honorable Marilyn Hall Patel's chambers, as opposed to Judge Patel herself. At the clerkship's conclusion, Judge Patel advised Attorney Olivarius not to use her as a reference, stating in a letter, "I am advising you that you may not use me as a reference." Roberts Aff., Ex. F at 2. Judge Patel's letter explains that Attorney Olivarius "abused [her] new position of trust" through multiple misrepresentations, including her "outright fabrication" regarding certain, post-employment obligations to Judge Patel, her misuse of "official stationery for matters of personal business," and her "total fabrication" regarding her deputy clerk's "work habits." *Id.* at 1.

[17] With respect to her termination from Goldman Sachs, Attorney Olivarius's firm's website previously revealed that "she was accused of expense account fraud and fired." Roberts Aff., Ex. G. With respect to her termination from The Stanley J. Sarnoff Endowment for Cardiovascular Science, Inc. (the "Endowment") in 1996, an arbitrator found that she had breached her fiduciary duties to the Endowment by concealing material information for her own benefit. *See Olivarius v. Stanley J. Sarnoff Endowment for Cardiovascular Sci., Inc.*, 858 A.2d 457, 459 (D.C. App. 2004). Attorney Olivarius disputes the bases for both terminations – she claims she reported unlawful conduct at Goldman and that the Endowment defrauded the arbitrator – but the fact remains that both raised questions about her fitness to practice law. *Id.*; Roberts Aff., Ex. G.

- Although Attorney Olivarius "has been involved in extensive prior litigation, [Olivarius] falsely answered 'no' in reply to three questions on her application that required her to disclose all or some of the litigation." *Id.* [18]

*Id.* Based on these findings, the Appellate Division concluded that Attorney Olivarius "clearly fell woefully short of submitting an application for admission that properly and with candor supplied all requested information." *Id.* at 1225. As a result of these deficiencies, "[t]he application submitted by [Olivarius] had the effect of deflecting appropriate inquiry by this Court's Committee on Character and Fitness rather than apprising it of relevant potential character and fitness concerns." *Id.* Although the court noted in mitigation that the deficiencies in Attorney Olivarius's application were in part due to "carelessness," it revoked Attorney Olivarius's admission to the New York bar and struck her from the state's roll of licensed attorneys. *Id.* at 1225-26.

The effect of Attorney Olivarius's suspension from the New York bar was wide-ranging. As a result of the disciplinary action against her in New York, Attorney Olivarius was suspended from practice by the United States District Court for the District of Minnesota. *See* Roberts Aff., Ex. I. In addition, the District of Columbia Court of Appeals imposed "reciprocal discipline" consisting of an eighteen-month suspension and a requirement that Attorney Olivarius repeat "the course on the District of Columbia Rules of Professional Conduct and District of Columbia practice that all new members of [the D.C.] bar are required to complete." *In re Olivarius*, 90 A.3d 1113, 1114 (D.C. 2014). Attorney Olivarius was also disqualified from *pro hac vice* admission in a separate matter in the Southern District of Florida after she failed to properly

---

[18] Attorney Olivarius also had ample reason to conceal her history as a litigant. *See Olivarius v. Friedman et al.*, No. 1:05-cv-00717 (N.D. Md. Mar. 14, 2005); *Olivarius v. Sarnoff Endowment for Cardiovascular Science, Inc.*, No. 98-ca-008769 (D.C. Super. Nov. 16, 1998); *Shearman & Sterling v. Olivarius*, No. 96-cv-602260 (Sup. Ct. N.Y. May 1, 1996). Indeed, not only had she litigated her termination from the Endowment extensively, that litigation had resulted in the filing of a motion for Rule 11 sanctions stemming from allegations that she had filed a frivolous complaint and improperly attempted to gain an advantage by circulating false allegations to the Endowment's Board to improperly gain an advantage in the litigation. Roberts Aff., Ex. H at 1-2. That latter tactic sounds uncannily similar to her improper contact with Ms. Taylor in this matter.

14

inform that court of the New York suspension, as required by the Local Rules of the Southern District of Florida.  *See* Roberts Aff., Ex. J.

## CONCLUSION

For the foregoing reasons, Attorney Olivarius is undeserving of the privilege of practicing before this court.  Accordingly, Defendants Wheelock College, Jackie Jenkins-Scott, and Katherine S. Taylor, respectfully request that this Honorable Court deny the Motion for Admission of Visiting Lawyer *Pro Hac Vice* filed by Plaintiff Gail Dines's attorney, Anita Vadgama.

**WHEELOCK COLLEGE, JACKIE JENKINS-SCOTT,** and **KATHERINE S. TAYLOR**
By their attorneys,

/s/ Scott A. Roberts
Scott A. Roberts (BBO No. 550732)
    sroberts@hrwlawyers.com
Arielle B. Kristan (BBO No. 677048)
    akristan@hrwlawyers.com
HIRSCH ROBERTS WEINSTEIN LLP
24 Federal Street, 12th Floor
Boston, Massachusetts 02110
(617) 348-4300

Dated: November 10, 2016

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on November 10, 2016.

/s/ Scott A. Roberts
Scott A. Roberts