UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GAIL DINES,

     Plaintiff,

v.                                                                          Case No. 1:16-cv-11876-GAO

WHEELOCK COLLEGE, a corporation,                    **LEAVE TO FILE GRANTED**
JACKIE JENKINS-SCOTT, in her official and            **ON DECEMBER 6, 2016**
individual capacities, KATHERINE S.
TAYLOR, in her official and individual
capacities, and KINGSTON BAY GROUP, a
limited liability corporation,

     Defendants.

_____/

### PLAINTIFF GAIL DINES REPLY TO WHEELOCK DEFENDANTS' OPPOSITION TO PLAINTIFF GAIL DINES'S MOTION FOR ADMISSION OF VISITING LAWYER PRO HAC VICE

Plaintiff Gail Dines ("Plaintiff" or "Dr. Dines"), by and through undersigned counsel, hereby submits this Memorandum in Reply to the Opposition of Defendants Wheelock College ("Wheelock"), Jackie Jenkins-Scott ("President Jenkins-Scott"), and Katherine S. Taylor ("Ms. Taylor") (collectively, "Defendants") to Plaintiff's Motion to Admit Dr. Ann Olivarius  ("Dr. Olivarius") *Pro Hac Vice* (the "Motion").

### INTRODUCTION

Dr. Olivarius has enjoyed a lengthy, successful legal career faithfully representing clients throughout the world and is an acclaimed lawyer.  *See* Affidavit of Dr. Ann Olivarius ("Olivarius Aff."), ¶¶3-17.  Because of her record of successful advocacy, not in spite of it, Defendants oppose her *pro hac vice* admission to appear in the instant lawsuit by continuing tactics reminiscent of the discriminatory and defamatory actions they have taken against the Plaintiff in

this case, vilifying Dr. Olivarius as unethical and unfit to practice before this Court.  If Defendants had a sense of humor, their motion would rate high in irony.  Despite the self-proclaimed compelling need "to bring to the Court's attention Dr. Olivarius's repeated violations of the rules of professional responsibility and lack of candor to previous tribunals," (Doc. 24, Page 2), Defendants' Opposition misrepresents the objective facts surrounding the allegedly unethical events raised, intentionally omits facts that explain and mitigate others, and otherwise spews baseless allegations in an attempt to improperly cloud the Court's judgment.  Dr. Olivarius has committed none of the ethical violations Defendants claim, is in good standing with every bar of which she has ever been a member, and is entirely fit to practice before this Court.

## ARGUMENT

Local Rule 83.5.3 governs practice by persons not members of the bar in this district.  "In view of the high mobility of the bar, and also the trend toward specialization," *pro hac vice* admission of out-of-state attorneys is a practice to be encouraged.  *See Leis v. Flynt*, 439 U.S. 438, 442 (1979).

Dr. Olivarius' certification shows that she satisfies all the necessary requirements of LR 83.5.3(e)(3).  She is a member in good standing of the bars of the District of Columbia, Idaho, Minnesota, New Hampshire, New York and Virginia, and a Solicitor of the Senior Courts of England and Wales.  She is not the subject of any disciplinary proceedings anywhere, and has never had a *pro hac vice* admission in this court (or any other court) revoked for misconduct. Further, Dr. Olivarius has certified that she has read and agrees to comply with the Local Rules of the United States Court for the District of Massachusetts.  Doc 11, Pages 5-6.

Defendants do not dispute this.  Instead, they beg this Court to exercise its discretion to otherwise deny the Motion based on what they claim are three violations of Rule 4.2 of the

Massachusetts Rules of Professional Conduct and an entirely inadvertent oversight in applying for admission to the New York bar, when an incomplete draft application was sent in mistakenly by her husband.  *See* Doc. 24, Pages 2-3.

**I.      Dr. Olivarius Did Not Violate Rule 4.2 By Improperly Communicating with Wheelock Defendants[1]**

Defendants' insistence that Dr. Olivarius should be denied admission *pro hac vice* because she has violated Rule 4.2 three times is supported solely by conjecture and Defendants' strained and sometimes actively misleading rendition of the facts.  Rule 4.2 provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

RPC 4.2.  As the rule makes clear, Rule 4.2 "only applies in circumstances where the lawyer knows that the person is in fact represented in the matter to be discussed.  This means that the lawyer has knowledge of the fact of the representation; but such knowledge may be inferred from the circumstances."  RPC 4.2, cmt. 8.  The rule does not apply to communications made outside the scope of a known representation and does not prohibit party-to-party contact outside the presence of counsel.  *See id.*, cmts. 2, 4.  Importantly, "[p]arties to a matter may communicate directly with each other, and a lawyer is not prohibited from advising a client concerning a communication that the client is legally entitled to make."  *Id.*, cmt. 4.  Under these standards, Dr. Olivarius did not engage in prohibited *ex parte* contact with Defendants contrary to Rule 4.2.

---

[1] Where attorney-client communications are referred to in this Reply, Drs. Gallos and Silverman have agreed to waive their right to the attorney-client privilege pertaining thereto only for the limited extent of determining this Motion, and only insofar as those communications are discussed in their or Dr. Olivarius' Affidavits.  In all other respects, the Plaintiffs assert their right to the confidentiality and privilege of communications with Dr. Olivarius and her firm.

A.   Dr. Olivarius Did Not Know Attorney Hirsch Represented the Wheelock Defendants in the Gallos Matter When She Wrote Ms. Taylor on August 4, 2015.

Rule 4.2 is matter specific.  *See U.S. v. Overseas Shipholding, Inc.*, 625 F.3d 1, 13-14 (1st Cir. 2010).  It "only applies in circumstances where the lawyer knows that the person is in fact represented *in the matter to be discussed*."  RPC 4.2, cmt. 8 (emphasis added).  The term "matter" is not defined in the Rules of Professional Conduct, and "the comments to ABA Model Rule 4.2 provide little guidance to its intended meaning."  *People v. Santiago*, 895 N.E.2d 989, 993 (Ill. App. Ct. 2008).  Courts have made clear, however, that Rule 4.2 requires more than general knowledge of an attorney's past connection to a person.  *See Miano v. AC&R Advertising, Inc.*, 148 F.R.D. 68, 79 (S.D.N.Y. 1993), *adopted by* 834 F. Supp. 632 (S.D.N.Y. 1993).  Rather, a person is known to be "represented" only if it is known to "have an attorney-client relationship with respect to the matter at issue."  *S.E.C. v. Lines*, 669 F. Supp. 2d 460, 464 (S.D.N.Y. 2009).

Dr. Olivarius did not presume to know that Attorney Hirsch was representing Wheelock with respect to Drs. Dines', Gallos' and Silverman's claims when she wrote to Ms. Taylor, the Board Chair, on August 4, 2015.  Olivarius Aff., ¶60  For Drs. Dines and Silverman, this letter was the first communication Wheelock received from their legal counsel putting it on notice that they intended to file EEOC charges. Doc. 25-1, Page 1.  It was therefore entirely appropriate, in the absence of any formal notification that Attorney Hirsch was representing Wheelock with respect to those claims, that this communication be sent to Ms. Taylor in the first instance.

With respect to Dr. Gallos, based on conversations with her, Dr. Olivarius reasonably believed that Attorney Hirsch would *not* be representing Wheelock against Dr. Gallos.  Olivarius Aff., ¶64.  Dr. Gallos, as the former Vice President of Academic Affairs, had worked intimately with Attorney Hirsch.  Affidavit of Dr. Joan V. Gallos ("Gallos Aff."), ¶11.  She told Dr.

Olivarius that she was sure that Wheelock, which used many attorneys, would *not* use Attorney Hirsch in her case. *Id.* at ¶9. Her case was now heading towards litigation, but he was not a litigator. More importantly, Attorney Hirsch, who was a social friend, had also told Dr. Gallos several times that he was disturbed by President Jenkins-Scott's mistreatment of her, so much so that he tried to shield her from it behind the scenes. *Id.* at ¶¶11. Further, Dr. Gallos discussed with Dr. Olivarius that Attorney Hirsch had evidence relevant to her case that would cause her to call him as a witness if her complaints were not promptly resolved, which clearly presented a conflict of interest between his role as advocate for Wheelock and as a potential witness. *Id.* at ¶12. Attorney Hirsch also told Dr. Gallos that based on what he knew about President Jenkins-Scott's treatment of Drs. Dines and Silverman, he might find it impossible to represent the College in any litigation involving them. *Id.* at ¶11.

Because she did not think Attorney Hirsch would be Wheelock's lawyer for Dr. Gallos under these circumstances, Dr. Olivarius thought it was proper to inform Ms. Taylor in one communication that she was the new lawyer for Drs. Dines, Silverman and Gallos. Further, she wrote in that letter that given Attorney Hirsch's clear conflict of interest, it could not follow that he would still be counsel in the Gallos matter. Doc 25-1, page 3.

Once Attorney Hirsch wrote to Dr. Olivarius that Defendants had in fact retained him as counsel in all three matters, she immediately directed all further communications pertaining to these matters to him. That said, Dr. Olivarius continued to raise the issue of Attorney Hirsch being conflicted pursuant to Rule 3.7 of the Massachusetts Rules of Professional Conduct. Doc. 25-3, Page 3. He apparently took note of this, as he is not attorney of record in Drs. Dines', Silverman's or Gallos' lawsuits.

B. Dr. Olivarius Did Not Direct Drs. Silverman or Gallos to Contact the Defendants.

5

### (1) **The Sanghavi report**

Rule 4.2 does not prohibit Plaintiffs from having direct contact with the Defendants, *see* RPC 4.2, cmt. 4.   Defendants' counsel claim that Dr. Olivarius manipulated Drs. Dines and Silverman into letting her put an addendum to their rebuttal of the Sanghavi report in order to contact the Board directly.   Doc. 24, Page 9. However, the facts show that Drs. Dines and Silverman acted in their own right due to their own concerns as they shaped the rebuttal they wrote to the Sanghavi report, and that Dr. Olivarius' brief addendum to it was appropriate.

Dr. Olivarius' statement was intended to give gravitas to Drs. Dines and Silverman's extensive rebuttal of the falsehoods, misstatements, and outright lies contained in the Sanghavi report; highlighting in particular its multiple failures of due process, a subject about which an attorney has expertise. *See* Olivarius Aff., ¶71,  Affidavit of Dr. Eric K. Silverman (Silverman Aff.), ¶9.   Dr. Dines and Silverman reasonably believed that the Sanghavi report might end up reaching multiple audiences, including not only the wider Wheelock community but potentially other academic institutions and potential employers; to those audiences, a lawyer's letter would add credibility. *Id.* at ¶8.   Also, since the Sanghavi report had the imprimatur of the law firm that produced it (the Sanghavi Law Office), it made sense to Drs. Dines and Silverman to counteract this with a statement from another law firm. *Id.* at ¶9. Dr. Olivarius' brief addendum was in no way an attempt to reach the Board behind the backs of Wheelock's attorneys; it was more like a press release that might be read widely, or not, by whoever ended up reading the rebuttal. Olivarius Aff., ¶72.   Indeed, the opening lines of Dr. Olivarius' addendum show that the Board was not Dr. Olivarius' intended audience.   She introduced herself as counsel for Drs. Dines and Silverman, and then introduced them as "the subjects of the Sanghavi Report," revealing her

expectation that the reader needed these introductions.  Certainly no such introduction was needed by the Board in July 2016.  *See* Doc. 25-5, Page 2.

### (2) The Chard-Gallos Meeting

As if the factual basis for the alleged ethical violation relating to the Sanghavi report is not flimsy enough, Defendants' position with regard to Dr. Gallos' meeting with President Chard borders on the contrived.  Contrary to Defendants' Opposition, President Chard did not "agree" to meet with Dr. Gallos, *he* approached *her* by email to solicit the meeting.  Gallos Aff., Exh. JG 1.  Thereafter, he requested that Dr. Gallos agree to keep the discussion "confidential" and "without attorneys" so that they could work toward resolving her claims.  *Id.* at Exh. JG 2. Based on his invitation and these conditions, Dr. Gallos prepared assiduously for their meeting, compiling useful information and notes for the discussion.  *Id.* at ¶18.  At the meeting on August 19, 2016, President Chard asked her for a copy of her notes, and also that she send an electronic copy afterwards. Dr. Gallos complied under the assumption of confidentiality he had demanded and both parties had signed: "We have also agreed that our conversations regarding a potential resolution shall be strictly confidential, and that any statements made during our discussions *shall not be admissible for any purpose in any related litigation.*"  *Id.* at ¶¶ 17, 21 and Exh. JG 3 (emphasis added).

Rather than honor that confidentiality, President Chard produced Dr. Gallos' notes, which included attorney work product outlining recent jury verdicts, to Attorney Hirsch, who now seeks to wield them as a sword to strike down Dr. Olivarius.  Claiming they seek only to uphold legal ethics, Defendant's counsel here abuse the well known ethical rules applying to confidential settlement discussions, as well as the contract their client signed with Dr. Gallos

making their communications arising out of those discussions "not…admissible for any purpose in any related litigation."  The Court should strike this material for that reason.

Moreover, Defendants' Opposition blatantly omits, indeed mischaracterizes, the factual circumstances of the Chard-Gallos exchange.  Indeed, these objective facts could easily be interpreted to show that it was more likely that Attorney Hirsch, not Dr. Olivarius, orchestrated the August meeting between President Chard and Dr. Gallos as an opportunity to gather confidential information from her claims.

## II.     Defendants' Misuse of Selected Past Events Concerning Dr. Olivarius.

Defendants sensationalize past events in the distinguished three-decade career of Dr. Olivarius attempting to manufacture a pattern of unethical behavior that does not exist.  *See generally* Olivarius Aff.  Relying on half-truths and misstatements of facts so tortured they must be intentional, Defendants offer this Court a twisted fraction of the true story.  With regard to the *pro hac vice* application in *Morrison v. University of Miami et al.*, No. 1:15-cv-23856, at *3 (S.D. Fla. Nov. 5, 2015), for instance, Defendants depict Dr. Olivarius' actions as the "exact same misconduct" as that it claims above.  Doc. 24, Pages 11-12.  They know this to be untrue. The Court in fact granted Dr. Olivarius *pro hac vice* admission in that case, after defendants there sought similarly to manufacture a bogus ethical claim that she had contacted defendants improperly.  Olivarius Aff., ¶¶55-57.  In admitting her, the Court there clearly stated it was "skeptical that even if Dr. Olivarius . . . contacted an employee of the [defendant], that this would rise to the level of an ethics violation."  *See* Doc. 26-5, Page 5, n.4.  Second, although Defendants scoured more than thirty years of Dr. Olivarius' professional history to construct their grim narrative, they could only do so by twisting and hiding the ample evidence of her extraordinary legal career.  Olivarius Aff., ¶¶ 3-15.  For example, Defendants claim that Dr.

Olivarius was "disqualified" from *pro hac vice* admission in Florida "after she failed to properly inform that court" of a suspension of her New York license.  Doc 24, Pages 14-15.  Defendants do not tell the Court that the "disqualification" order arose out of Dr. Olivarius' voluntary motion to withdraw her *pro hac vice* status at the completion of the case, and that she did indeed inform the court of her status in New York. Olivarius Aff., ¶¶42-51.  Her behavior was precisely the opposite of the lack of candor the Defendants claim.  *See* Doc. 26-10.  Nor do Defendants manage to describe that the same court, the Southern District of Florida, fully examined these circumstances last year, decided they were insubstantial, and promptly admitted her *pro hac vice*.  *See* Doc. 26-5.

Finally, Defendants greatly exaggerate the New York bar incident.  It was wrong that Dr. Olivarius' husband mistakenly submitted an incomplete draft application rather than the actual one, but the applications she herself submitted contemporaneously to other states were found to be true and complete.  The ripple effects of the mistaken New York application have been time-consuming, but entirely derivative.  As detailed in Dr. Olivarius' Affidavit, these events were carefully examined by the bar authorities there, who were strongly positive during her character and fitness interview and readmitted her.  Olivarius Aff., ¶21.  Idaho then admitted her after a full examination. *Id.*, ¶25. She remains admitted in every jurisdiction to which she has ever been admitted. *Id.*, ¶28.   It is peculiar that Defendants think they know better than all these jurisdictions, which took due care to assess the evidence and found in Dr. Olivarius' favor, and now press this Court to contradict all of them.

## III.    Dr. Olivarius' Alleged Ethical Misconduct Does Not Warrant the Court Exercising its Discretion To Deny the Motion.

Even if the Court considers that Dr. Olivarius committed an ethical violation(s), none of the ones advanced by Defendants rise to the level that warrants the Court exercising its discretion

to not admit her *pro hac vice*.  *See Kampitch v. Lach,* 405 F. Supp. 2d 210, 218 (D.R.1. 2005) (motion for *pro hac vice* denied where attorney falsely represented that he had not appeared or applied to be admitted *pro hac vice* in any cases in the district during the previous 24 months, signed the Complaint before being admitted to practice before the Court, and had been sanctioned in three cases in other jurisdictions); *Katz v. McVeigh,* CIV. No. 10-cv-410-JL, 2012 U.S. Dist. LEXIS 55575 * at 11 (D.N.H Apr. 20, 2012) (denial where attorney seeking *pro hac vice* admission had engaged in a pattern of behavior "that has resulted in the wasting of judicial resources" following numerous instances where attorney had not demonstrated that he understood appropriate practice).

## CONCLUSION

Dr. Olivarius has demonstrated herself to be an excellent lawyer over many decades.  The submission of an incomplete draft New York bar application may not have been her (or her husband's) finest hour, but it and every other controversy of her career have been thoroughly examined by the authorities of New York and other states where she is admitted to practice law, and she is in good standing in all of them.  The Defendants' Opposition does not advance valid or even close arguments, but throws mud, in the form of alleged ethical violations, hoping some will stick and, with luck, that the Court will exercise its discretion to keep out an accomplished attorney and advocate. Plaintiff wishes to have Dr. Olivarius represent him in this Court, and respectfully requests that the Motion to admit her *pro hac vice* be granted.


DATED: DECEMBER 7, 2016

Respectfully submitted,

_____/s/ Anita Vadgama_____

BY:  Attorney Anita Vadgama
BBO #669319
McALLISTER OLIVARIUS
7 Wells Street
Saratoga Springs, NY 12866
Telephone:        (518) 633-4775
Facsimile:        (781) 658-2480
Email:            avadgama@mcolaw.com

The Pearce Building
West Street, Maidenhead,
SL6 1RL, U.K.
Telephone:  (518) 633-4775 or +44 1628 567544

Attorney for Plaintiff
GAIL DINES

## CERTIFICATION OF SERVICE

I, Anita S. Vadgama, hereby certify that the document was filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing on this date.

/s/ Anita Vadgama_____
Anita S. Vadgama