UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GAIL DINES,

    Plaintiff

v.

WHEELOCK COLLEGE, a corporation, JACKIE
JENKINS-SCOTT, in her official and individual
capacities, KATHERINE S. TAYLOR, in her
official and individual capacities, and KINGSTON
BAY GROUP, a limited liability corporation,

    Defendants.

_____/

Case No. 1:16-cv-11876-GAO

## AFFIDAVIT OF ERIC K. SILVERMAN IN SUPPORT OF REPLY TO WHEELOCK DEFENDANTS' OPPOSITION TO MOTION FOR VISITING ATTORNEY *PRO HAC VICE*

ERIC K. SILVERMAN, being duly sworn, deposes and says:

1.     I am the Plaintiff in the case *Eric K. Silverman v. Wheelock College, Jackie Jenkins-Scott, Katherine S. Taylor and Kingston Bay Group* (case number: 1:16-cv-11879). Like Dr. Dines, the Plaintiff in the instant case, I am represented by Dr. Ann Olivarius' firm, McAllister Olivarius. My lawsuit is also brought against all four defendants in this case. The evidence set out in this Affidavit is based on my personal knowledge.

2.     I submit this Affidavit in support of Plaintiff Gail Dines' motion for leave to file a reply to the Opposition of Defendants Wheelock College ("Wheelock"), Jackie Jenkins-Scott ("President Jenkins-Scott"), and Katherine S. Taylor (collectively, "Defendants") to Plaintiff's Motion to admit Dr. Ann Olivarius *pro hac vice*.

1

3. For the purposes of being able to properly respond to the Wheelock Defendants Opposition to the Motions to Admit Dr. Olivarius *pro hac vice*, I have consented to waive attorney-client privilege. However, this waiver stands only for that purpose and only insofar as it refers to attorney-client communications that are set out below and not in any other respect. I respectfully submit to the Court that all other conversations between my counsel and me are governed by attorney-client privilege and cannot and should not be disclosed.

4. In March 2016, Dr. Gail Dines ("Dr. Dines") and I were informed by President Jackie Jenkins-Scott and Board Vice Chair Daniel Terris that an external law firm, the Sanghavi Law Office ("Sanghavi"), would be conducting a "fact finding" investigation into our teaching.

5. This investigation followed months of discrimination and retaliation at the hands of Wheelock and President Jenkins-Scott. Indeed, the previous year, President Jenkins-Scott sought to conduct a punitive external investigation which was intended to find grounds for disciplining and/or firing Dr. Dines and me. President Jenkins-Scott was only dissuaded from launching such an investigation by the combined intervention of one of Wheelock's lawyers, Attorney Jeffrey Hirsch, whose firm is currently handling this litigation, and its Vice President of Academic Affairs, Dr. Joan Gallos, plaintiff in a related case, who advised President Jenkins-Scott that such an investigation would violate Wheelock's rules and governing procedures regarding faculty, that it would amount to retaliation, and therefore be illegal.

6. This new investigation in March 2016 – which was announced to us as a *fait accompli* – thus came as a shock to Dr. Dines and me. It was described misleadingly to the Wheelock community as an attempt to improve community relations, but it quickly became apparent that its real purpose was to target and to discredit Dr. Dines and me – apparently a new

front in President Jenkins-Scott's campaign against us. Accordingly, on advice of counsel, we declined to participate in the Sanghavi law firm's "show trial" investigation.

7. When Dr. Dines and I received a final copy of the investigation report (the "Sanghavi report"), we were horrified by the breadth and depth of the mischaracterizations and outright lies that it contained about us; how poorly it was written; and how carelessly it stated its findings, without foundation or corroboration. We were thrown by the fact that Wheelock – our professional home for so long, and where we are to carry out the rest of our careers as tenured faculty – had betrayed us to the extent that it could solicit something as distorted and detrimental as the Sanghavi report. We felt incredibly vulnerable.

8. While Dr. Dines and I were not entirely sure how extensively this lawyers' report by the Defendants would be circulated, we knew that at the very least, its dissemination would be wide enough to include the entire Wheelock leadership team, the Board, and our colleagues on the Faculty Senate. We also had a reasonable belief that our response might end up needing to reach a range of public audiences including academics at other universities and in our wider networks. We feared that the contents of the Sanghavi report would jeopardize our professional and academic reputations. Thus, to protect our reputations at Wheelock and within the wider academic community, we felt that it was crucial for us to respond fully to the false allegations contained in the Sanghavi report, and since it had been written by lawyers, to have a lawyer endorse our response.

9. Accordingly, Dr. Dines and I prepared a thorough response plus extensive appendices for those who cared about the substance of the allegations. We prepared a shorter summary for readers who would not have interest in all the details. We also asked our attorney, Dr. Ann Olivarius, to write a brief final statement. We believed that in the context of President

Jenkins-Scott's campaign against us, our own words might be dismissed. We determined that a note from our lawyer putting our response into context would give gravitas to the reply, especially as Wheelock had similarly chosen to give its attack on us the imprimatur of a law firm. Further, we believed it was appropriate that our attorney speak specifically to the highly peculiar violations of due process the Sanghavi report represented – a matter a lawyer is much better equipped to explain than we are. Dr. Dines and I wanted to counter the untruths and misrepresentations that were being made about us comprehensively.

10. On July 5, 2016 I sent our rebuttal to Wheelock's Board, as well as the Institutional Leadership Team. While I did not disseminate our rebuttal to a wider audience at that stage, it was prepared with that possibility in mind, and with the intention that anyone who might read our response could see plainly that the Sanghavi report was another act of deliberate retaliation. (Doc 25-5.)

11. It was the decision of Dr. Dines and me to respond to the Sanghavi report. We instructed Dr. Olivarius to write a statement that put our response into perspective, and we alone decided to include it in the final, complete package. Dr. Dines and I also decided to whom, and when, we sent our response. At no point did Dr. Olivarius instruct us to take these actions. We alone were responsible for sending the complete response to the Sanghavi report to members of the Board and others affiliated with the College.

12. I declare under the penalties of perjury on this 1st day of December 2016 that the foregoing is correct and true.

_____

DR. ERIC K. SILVERMAN

Commonwealth of Massachusetts
County of Middlesex

On this 1 day of December, 20 16, before me, the undersigned notary public, personally appeared Eric K. Silverman proved to me through satisfactory evidence of identification, which were MADL_____, to be the person who signed the preceding and attached documents in my presence, and who swore or affirmed to me that the contents of the document in my presence, and who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

_____
Notary Public Signature



SHAWN MCLEAN
Notary Public, Commonwealth of Massachusetts
My Commission Expires September 30, 2022

## **CERTIFICATE OF SERVICE**

I, Anita S. Vadgama, hereby certify that the document was filed through the ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing on December 2, 2016.

/s/ Anita Vadgama

Anita S. Vadgama