UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

GAIL DINES,
       Plaintiff,

v.

WHEELOCK COLLEGE,
a corporation, JACKIE JENKINS-SCOTT, in
her official and individual capacities,
KATHERINE S. TAYLOR, in her official and
individual capacities; and KINGSTON BAY
GROUP, a limited liability corporation,
       Defendants.

C.A. No. 1:16-cv-11876-GAO

**HEARING REQUESTED**

---

**MEMORANDUM IN SUPPORT OF DEFENDANT WHEELOCK COLLEGE'S
MOTION TO DISMISS**

Defendant Wheelock College ("Wheelock" or the "College") respectfully submits this

memorandum of law in support of its motion to dismiss Counts I, II, III, and VI of Plaintiff Gail

Dines's Complaint (the "Complaint").

**INTRODUCTION**

Answering a civil complaint should not be a game of hide and seek, and yet by burying

her allegations against the College in 72 pages of irrelevant, argumentative, and derogatory

rhetoric, that is precisely the challenge that Dr. Dines poses to the College.  Instead of the "short

and plain" statement of claims required by Rule 8 of the Federal Rules of Civil Procedure ("Rule

8"), Dr. Dines has lodged against Wheelock a voluminous complaint fatally infected with

material that has no proper place in a public pleading.  Indeed, Dr. Dines appears to be more

interested in using the Complaint to rehash old (and irrelevant) disputes with the College and its

former president Jackie Jenkins-Scott ("President Jenkins-Scott") than in stating her claims in the

manner prescribed by the Federal Rules of Civil Procedure.  Dr. Dines's departure from the

strictures of these rules puts an unreasonable burden on the College, which would have to excise the improper materials from her voluminous allegations before it could even begin to answer as required by the Federal Rules of Civil Procedure.  Rule 8 does not allow Dr. Dines to impede the College in this manner and, accordingly, the claims against Wheelock should be dismissed.

## **PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS**[1]

On February 1, 2016, Dr. Dines filed a Charge with the EEOC against Wheelock College and then-President Jackie Jenkins-Scott ("President Jenkins-Scott") (the "EEOC Charge").  Cp., ¶12.  *See* Roberts Aff., Ex. A.  On April 19, 2016, Dr. Dines filed "supplemental particulars" amending her EEOC Charge "detailing further retaliation, harassment and discrimination against her since the filing of her initial charge" (the "Amendment").  Cp., ¶13.  *See* Roberts Aff., Ex. B, p. 1.

On May 23, 2016, Wheelock and President Jenkins-Scott filed a Position Statement in response to Dr. Dines's EEOC Charge and the Amendment thereto (the "Position Statement").  Cp., ¶14.  *See* Roberts Aff., Ex. C.  Dr. Dines, through counsel, subsequently requested a right-to-sue letter from the EEOC.  Cp., ¶13.  *See* Roberts Aff., Ex. D.  On June 17, 2016, the EEOC issued a "Notice of Right to Sue," which states on its face that it was "Issued on Request" (the "Right-to-Sue Notice").  *See id*.

On September 15, 2016, Dr. Dines filed her Complaint in this action.  The Complaint is 72 pages long and consists of 187 numbered paragraphs. *See id*.  In the Complaint, Dr. Dines brings causes of action against the College for employment discrimination, hostile work

---

[1]     The facts set forth herein are based on facts (not arguments or conclusions) in Dr. Dines's Complaint and the documents referenced in her Complaint, in particular her EEOC filings.  Citations to allegations in Dr. Dines's Complaint will be in the form "Cp., ¶ ___."  Documents referenced but not attached to the Complaint are submitted in the Affidavit of Scott A. Roberts previously filed in this matter (Docket No. 23) and citations to those documents will be in the form "Roberts Aff., Ex ___."

environment, retaliation, and defamation (Counts I, II, III, and VI).[2]  *See* Cp., ¶¶158-168, 179-187.  In setting forth these causes of action, the Complaint incorporates by reference nearly every factual allegation in the Complaint.[3]  *See id.* at ¶¶158, 161, 165, 179.  As set forth below, Dr. Dines's pleading strategy contravenes the requirements of the Federal Rules of Civil Procedure and places an impermissible burden on the College.

## ARGUMENT

### A.    Legal Standard.

Rule 8 of the Federal Rules of Civil Procedure governs the substance of pleadings in the federal courts.  *Malin v. Malin*, 2013 WL 4539130, at *2 (D. Mass. Aug. 25, 2013).  For plaintiffs, Rule 8(a)(2) dictates that a civil complaint must consist of a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  *See also Greg Beeche Logistics, LLC v. Skanska USA Bldg., Inc.*, No. 1:12-CV-11121, 2014 WL 4656503, at *4 (D. Mass. Aug. 5, 2014) ("A plaintiff properly pleads a claim for relief by *briefly* describing the events supporting the claim.")(emphasis in original).  Rule 8(d)(1) further requires that each allegation of a complaint be "simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).

Rule 12(f), which bars the inclusion in pleadings of certain impermissible allegations, is "designed to reinforce the requirement in Rule 8(e) that pleadings be simple, concise, and direct."  *Minahan v. Town of East Longmeadow*, No. CIV.A. 12-30203-MAP, 2014 WL 1652646, at *2 (D. Mass. Apr. 22, 2014).  In particular, Rule 12(f) prohibits plaintiffs from including "any redundant, immaterial, impertinent or scandalous matter" in a complaint.  Fed. R.

---

[2]    In her Complaint, Dr. Dines also lodges claims against the College's former president (Jackie Jenkins-Scott), the current Chair of its Board of Trustees (Katherine S. Taylor), and an independent diversity consulting company that the College hired to conduct an analysis of diversity, inclusion, and equity on campus (the Kingston Bay Group).  These defendants separately have moved to dismiss Dr. Dines's claims against them.  *See* Docket Nos. 17, 19, 21.
[3]    Dr. Dines did not incorporate by reference only those allegations under the headings "Jurisdiction and Venue," "Parties," and "Procedural Requirements."  *See* Cp., ¶¶158, 161, 165, 179.

Civ. P. 12(f).  The presence of any of these materials "supports the conclusion that [a complaint] violates Rule 8." *Carney v. Town of Weare*, No. 15-CV-291-LM, 2016 WL 320128, at *5 (D.N.H. Jan. 26, 2016).

Read together, Rule 8(a)(2) and 8(d)(1) "underscore the emphasis placed on *clarity and brevity* by the federal pleading rules." *Peabody v. Griggs*, No. CIV.A. 08-243-ML, 2009 WL 3200686, at *10 (D.R.I. Oct. 6, 2009) (emphasis in original).  *See also Belanger v. BNY Mellon Asset Management*, LLC, No. 15-CV-10198-ADB, 2015 WL 3407827, at *1 (D. Mass. May 27, 2015) ("The purpose of a clear and succinct pleading is to give defendants fair notice of the claims and their basis as well as to provide an opportunity for a cogent answer and defense."). This is because "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Jackson v. Polaroid Corp.*, 181 F.3d 79, at *1 (1st Cir. 1992) (unpublished disposition).  *See also Braintree Baptist Temple v. Holbrook Public Schools*, 616 F. Supp. 81, 84 (D. Mass. 1984) ("blunderbuss approach of [plaintiffs'] 119-paragraph, 37-page complaint places an unjustified burden on the court and on the party who must respond to it because they are forced to select the relevant material from a mass of verbiage").  Consistent with these principles, a plaintiff's departure from the requirements of Rule 8 warrants dismissal when such noncompliance makes it unreasonable to expect a defendant to respond to the complaint.[4]  *See Sayied v. White*, 89 F. Appx. 284, at *1 (1st Cir. 2004) (unpublished disposition) (affirming dismissal of complaint so "prolix, redundant and unintelligible that it would have been unreasonable to expect defendants to frame a response to it"); *Lariviere v. Lariviere*, No. CIV.A. 11-40065-FDS, 2012 WL 1853833, at *3 (D. Mass. May 18, 2012) (dismissing "extremely

---

[4]      This Court has authority to dismiss the Complaint pursuant to Fed. R. Civ. P. 41(b), which provides for dismissal when a plaint fails to comply with the Federal Rules of Civil Procedure.

verbose, redundant, and incoherent" complaint because "it would [be] unreasonable to expect defendants to frame a response to it").

**B.     Dr. Dines's Failure to Comply with Rules 8 and 12 of the Federal Rules of Civil Procedure Make it Unreasonable for Wheelock to Respond to the Complaint.**

The sheer length of Dr. Dines's Complaint, which spans 72 pages and comprises 187 numbered paragraphs and 77 subparagraphs, for a total of _264 separate paragraphs_, runs afoul of the "short and plain statement" standard of Rule 8 and puts an unreasonable burden on the College.   Courts in this Circuit regularly have dismissed similarly protracted complaints.  _See_, _e.g._, _Kueter v. Rancourt_, 89 F.3d 823, at *1 (1st Cir. 1996) (unpublished disposition) (affirming dismissal of 100-page complaint); _Kuehl v. F.D.I.C._, 8 F.3d 905, 908 (1st Cir. 1993) (affirming dismissal of 43-page complaint); _Carney_, 2016 WL 320128, at *4 (dismissing 58-page complaint); _Greg Beeche Logistics,_ 2014 WL 4656503, at *5 (dismissing 122-page complaint); _Lariviere_, 2012 WL 1853833, at *2 (dismissing 55-page complaint).  So, too, have federal courts in other jurisdictions.  _See_, _e.g._, _Harrison v. Bd. of Regents of Univ. Sys. of Georgia_, 519 Fed. Appx. 641, 643 (11th Cir. 2013) (affirming dismissal of 82-page complaint); _Ciralsky v. C.I.A._, 355 F.3d 661, 669 (D.C. Cir. 2004) (affirming dismissal of 119-page complaint); _Cooke v. Deschaine_, No. 3:16-CV-138 (SRU), 2016 WL 3579070, at *2 (D. Conn. June 28, 2016) (dismissing complaint consisting of 42 single-spaced pages); _Chatterplug, Inc. v. Digital Intent, LLC_, No. 1:16-CV-4056, 2016 WL 6395409, at *2 (N.D. Ill. Oct. 28, 2016) (dismissing 96-page complaint).

Not only is Dr. Dines's Complaint impermissibly long, but it is littered with irrelevant, redundant, argumentative, and otherwise improper verbiage that would impede any effort by the College to answer the Complaint, and that, candidly, has nothing whatsoever to do with any claim of discrimination, retaliation, or hostile environment.  Dr. Dines's freewheeling and

untethered attacks and editorializing have no place in a federal court complaint.[5]   These improper

materials include, but are not limited to, the following:

- *Derogatory and irrelevant accusations against President Jenkins-Scott*.  *See, e.g.,* Cp.
  ¶22 (attacking President Jenkins-Scott's "leadership practices"); *id.* at ¶94 (statements
  in diversity report allegedly approved by President Jenkins-Scott were "Orwellian in
  their chilling conviction"); *id.* (President Jenkins-Scott had an "enemies list"); *id.*
  (alleging that criticisms of President Jenkins-Scott "intensif[ied] because the
  College's finances, enrollment and faculty morale were all suffering"); *id.* at ¶106
  (alleging that President Jenkins-Scott "churned through multiple [Vice Presidents of
  Academic Affairs] and had protected mediocre subordinates loyal to her"); *id.* at ¶156
  (purporting to describe President Jenkins-Scott's severance package).

- *Complaints about alleged mistreatment of third parties*.  *See, e.g.,* Cp. ¶¶31-36
  (complaining about treatment of Dr. Dines's colleague, Eric Silverman, at meeting
  that Dr. Dines did not attend); *id.* at ¶194 (complaining that Joan Gallos, a former
  College administrator, was "dismissed . . . after she did not act as a 'yes-woman'" for
  President Jenkins-Scott).

- *Speculation about individuals' subjective motivations or intentions.*  *See, e.g.,* Cp. ¶34
  (Dean Shirley Malone-Fenner "seemed startled and unsure" about content of student
  complaints); *id.* at ¶49 (comment by outside diversity consultant, "suggest[ed]" that
  he believed that Dr. Silverman was "trying secretly to undermine" President

---

[5]     Many of Dr. Dines's numbered paragraphs also run afoul of Rule 10 of the Federal Rules of Civil
Procedure, which governs the form of pleadings.  *See Malin v. Malin*, 2013 WL 4539130, at *2 (D. Mass. Aug. 25,
2013).  In particular, Dr. Dines fails to limit each of her numbered paragraphs to "a single set of circumstances" as
required by Rule 10(b).  *See, e.g.,* Cp. ¶¶ 22, 23, 25, 26, 32, 45, 46, 49, 53, 56, 62, 63, 83, 94.  This, too, hampers the
College's ability to respond to the Complaint by forcing the College to separate and parse multiple concepts within
each paragraph.

Jenkikns-Scott); *id.* at ¶102 (President Jenkins-Scott "appeared to confirm that she
wanted to 'double down' on [diversity consultant's] approach rather than moderate
it"); *id.* at ¶109 (College Board of Trustees "saw many problems with the College but
fundamentally had lost control over President Jenkins-Scott and was scared that firing
her would provoke accusations of racism" and "concluded they could not solve this
problem without terminating President Jenkins-Scott, and that was something they
were unwilling to tackle"); *id.* at ¶146 ("The [factfinding] report was intended from
the start to reach [a] hostile conclusion about Drs. Dines and Silverman . . . .  It
continued the campaign of discrimination, harassment and retaliation based on her
race, and religion.").

- *Conclusory assertions about "norms" at the College and in higher education*.  *See,
e.g.,* Cp., ¶32 (college administrator did not "follow normal College protocol"); *id.* at
¶40 (mediation by Faculty Senate was "the well-established way to handle" faculty
matters); *id.* at ¶66 (Vice President of Academic Affairs "would ordinarily conduct
investigations into any complaint about faculty . . . teaching"); *id.* at ¶70 ("The
normal standard in higher education is for faculty members to be put on paid leave
while any claims of irregular classroom behavior are investigated."); *id.* at ¶138 ("In
higher education, fact-findings into faculty affairs are always conducted by a
VPAA/Provost who, as an experienced senior academic leader, understands best
pedagogical practices.").

- *Descriptions of personal social media posts by College students and employees*.  *See,
e.g.,* Cp., ¶¶150-151 (discussing social media posts).

- *Subjective and conclusory descriptions of conduct by College employees*.  *See, e.g.,*
  Cp., ¶31 (Marta Rosa "openly attacked and demeaned" Dr. Silverman); *id*. at ¶32
  (Ms. Rosa "berated Dr. Silverman"); *id*. at ¶39 (College administrators were
  "reluct[ant] to engage seriously" with Dr. Dines); *id*. at ¶41 (faculty members on
  Diversity Committee "responded dismissively" to email from Dr. Silverman); *id*. at
  ¶43 (comparing "hostility" of College leadership to letter from Dr. Silverman with
  "warm welcome" of a letter from another faculty member).

- *Gratuitous commentary and rhetorical gimmickry*.  *See, e.g.,* Cp., ¶80 (President
  Jenkins-Scott "continued on her quest to punish and embarrass [Dr. Dines]."); *id*. at
  ¶136 ("From the outset, the [factfinding report] was not only needless, but also
  designed as a weapon against [Dr. Dines] instead of a fair inquiry."); *id*. at ¶141 ("No
  information was provided in the [factfinding report] on the criteria for what was
  deemed relevant or irrelevant for inclusion or on the process or rationale for alumni
  involvement.  Who made the decision to include alumni in the investigation?  From
  whom did alumni hear about it?  What were they told?  How and by whom were
  alumni comments solicited?  What were the criteria for selection?  Were all alumni
  given opportunity to comment?  Were any alumni or alumni comments screened out?
  What then made the comments of these four alumni relevant to questions about a
  current course as taught in 2015, especially since one had graduated in 2006?  The
  [factfinding report] did not say."); *id*. at ¶145 ("Even though it stretched, the
  [factfinding report] found nothing – because there was nothing to find."); *id*. at ¶147
  ("Thus the [factfinding report] stands as an unapologetic (and expensive) piece of

defamation against [Dr. Dines], and as a continuing embarrassment to Wheelock, one

that is contrary to its values of truth-seeking and scholarly integrity.").

- _Legal argument and conclusions._  *See, e.g.,* Cp., ¶80 ("Regardless of [former

   administrator's] efforts to keep the College form discriminating and retaliating

   against [Dr. Dines] through an unfounded investigation, President Jenkins-Scott

   continued with her quest to punish and embarrass [her]."); *id.* at ¶127 (Email from

   Co-Deans was "a direct attack on Drs. Silverman and Dines for filing their EEOC

   charges, despite the law's prohibition against retaliation."); *id.* at ¶132 (factfinding

   report "contains multiple indicators of unfairness and procedural oddness that belie its

   retaliatory purpose"); *id.* at ¶146 (factfinding report "continued the campaign of

   discrimination, harassment and retaliation [against Dr. Dines] based on her race, and

   religion").

It is not Wheelock's obligation to pick through this detritus to identify and respond to

whatever relevant material may be buried somewhere in Dr. Dines's Complaint.  *See Greg*

*Beeche Logistics*, 2014 WL 4656503, at *5 (dismissing complaint where responding to

complaint would "necessitate significant effort to separate the wheat from the chaff").  The

Federal Rules do not allow Dr. Dines to force Wheelock to "parse countless irrelevant and

unnecessary allegations in order to determine what exactly [Dr. Dines] alleges and whether the

[Complaint] states a claim upon which relief may be granted."  *Greg Beeche Logistics*, 2014 WL

4656503, at *5.  *See also Belanger*, 2015 WL 3407827, at *1 (dismissing complaint where it

would be "overly burdensome, if not impossible" for defendants to parse allegations against

them).  And yet, that is precisely what Wheelock would need to do to in order to answer the

Complaint.[6]  It would be unreasonable to ask Wheelock to shoulder this burden and, accordingly, Rule 8 mandates dismissal of the Complaint.  *See Sayied*, 2004 WL 489060, at *1; *Lariviere*, 2012 WL 1853833, at *3.

Rule 12(f)'s prohibition of "immaterial" and "scandalous" material in pleadings further militates in favor of dismissal of the Complaint.  *See Carney*, 2016 WL 320128, at *5.  The only evident reason for the inclusion of many of the statements set forth above is to embarrass and denigrate the College and President Jenkins-Scott.  *See, e.g.*, Cp. ¶¶22, 94, 106, 156.  This is not a proper use of a public pleading.  *See Gauthier*, 2011 WL 3902770, at *12 (Rule 12(f) bars inclusion of material that "improperly casts a derogatory light on someone"); *Carney*, 2016 WL 320128, at *5 (allegations "that appear[ed] to be included only to embarrass certain defendants" supported dismissal of complaint).  Dr. Dines's inclusion of these statements despite their obvious lack of relevance to her claims thus further warrants dismissal of the Complaint.  *See Carney*, 2016 WL 320128, at *5.

## CONCLUSION

For the reasons set forth herein, Defendant Wheelock College requests that this Court allow its Motion to Dismiss.

---

[6]      Parsing Dr. Dines's jumbled and voluminous allegations is not the only challenge Wheelock faces in answering the Complaint.  The Complaint also includes allegations that simply are not susceptible to a response under the Federal Rules of Civil Procedure.  Paragraph 141, which consists of a series of hypothetical questions to which Wheelock cannot fairly reply, is emblematic of this deficiency in Dr. Dines's pleadings.  *See* Fed. R. Civ. P. 8(b).

WHEELOCK COLLEGE,

By its attorneys,

/s/ Scott A. Roberts
Scott A. Roberts (BBO No. 550732)
    sroberts@hrwlawyers.com
Arielle B. Kristan (BBO No. 677048)
    akristan@hrwlawyers.com
HIRSCH ROBERTS WEINSTEIN LLP
24 Federal Street, 12th Floor
Boston, Massachusetts 02110
(617) 348-4300

Dated: December 12, 2016

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on December 12, 2016.

/s/ Scott A. Roberts