# Exhibit A



FOR SETTLEMENT PURPOSES ONLY

# JURY VERDICTS

**INFORMING AN ANALYSIS IN:**

Joan Gallos v. Jackie Jenkins-Scott, David Chard, Individually Named Trustees of Wheelock College and Wheelock College

Eric Silverman v. Jackie Jenkins-Scott, David Chard, Individually Named Trustees of Wheelock College, Kingston Bay Group and Wheelock College

Gail Dines v. Jackie Jenkins-Scott, David Chard, Individually Named Trustees of Wheelock College, Kingston Bay Group and Wheelock College

Below is a sample of published verdicts similar to the fact patterns and legal issues in the three cases about to be filed in the above-captioned cases against Wheelock cases:.

## Race and Reverse Race Discrimination

*Wilkins v. Harris Stowe State Univ.*, No. 1222-CC09117, 2015 WL 10133125 (Mo. Cir. Ct. Nov. 3, 2015) (jury verdict)

Wilkins, who is a white woman, had been a professor at Harris Stowe State University since 2001. In 2007, a black faculty member, Smith, was hired in the same department. Within her first three years at the university, Smith was promoted to assistant dean, dean and then interim co-chair of the department, while Wilkins was not promoted in her nine years at Harris-Stowe. As dean, Smith fired Wilkins, claiming it was a reduction in force. Wilkins alleged that Harris-Stowe failed to follow its own policy when the school dismissed Wilkins and skipped over several black faculty members. Also, according to the lawsuit, Smith followed a black power ideology, which led her to purge all white faculty members, except on, who was protected by tenure. The lawsuit alleged that the school systematically discriminated against white employees, and that the leader of the school openly voiced her prejudice

5 WELLS STREET | SARATOGA SPRINGS, NY 12866 | USA | (518) 633-4775 | MCOLAW.COM

UK Office: Thames Wharf Studios | Rainville Road | London W6 9HA | England | +44 (0)20 7386 1047
Partners: Dr Ann Olivarius (Solicitor of England & Wales and U.S. attorney licensed in MN, NH, VA, DC, ID & NY)
Dr J.F.O. McAllister (Registered Foreign Lawyer and U.S. attorney licensed in NY & CT)

against white faculty members to other faculty members. The jury award **$3.5 million in punitive damages** and **$1.35 million for lost wages and emotional distress, for a total verdict of $4.87 million**.

*McGraw v. Green River Community College*, No. 98-2-29255-5 (Wash. State Ct. 2000) (jury verdict)

Black male athletic director alleged the college retaliated against him and subjected him to a hostile work environment based on race/color discrimination by withholding pay and reducing his authority as a result of differences over fundraising. **Jury awarded $2 million in damages**.

*Hernandez, et al. v. City of South Gate, et al.* (Cal. Sup. Ct. 2007) (jury verdict)

There was a contentious divide between supporters of two different police chiefs. Latino officers who supported one police chief alleged they were subjected to a hostile work environment and intimidation. One of the officers, who was subjected to racial slurs, denied promotions, and denied positions in favor of supporters of the other chief, was awarded **$4 million in damages** (other officers awarded less, but still substantial).

*Monteiro v. City of Cambridge*, 2008 Jury Verdicts LEXIS 37135

In a Chapter 151B action against her employer, the employee alleged discrimination based on race and national origin, and retaliation, following her MCAD complaint. The jury award of over **$1 million in compensatory damages** and **$3.5 million in punitive damages** was upheld. The plaintiff was subjected to a campaign of retaliation by the city and her supervisor, the city manager, including marginalization, solicitation of complaints against her, and "trump[ed] up charges and engaging in a singularly harsh and prolonged investigation that still turned up nothing."

*Edwards v. Massachusetts Bay Transit Auth.*, JVR No. 802380, 2001 WL 910047

A female executive sued the defendant transit authority claiming race discrimination and retaliation under Massachusetts General Law chapter 151B. The plaintiff alleged that she was subjected to harassment and reduced responsibilities, and was suspended and terminated as retaliation for her complaint to a state agency. Race claim dismissed on summary judgment, but **punitive damages of $7,000,000** awarded.



## Reputation, Retaliation and Future Loss of Earning Capacity

*Sun v. University of Massachusetts-Dartmouth*, 2015 MA Jury Verdicts Review LEXIS 4

The plaintiff, an associate English professor from Taiwan, was denied a promotion to full professor because of her gender and race. The plaintiff was employed by the university in 1994 as an assistant professor in the English department, and after three years, she applied for - and received - tenure and was promoted to associate professor. In September 2003, the plaintiff applied for a full professorship with the defendant. The plaintiff satisfied all the applicable requirements for the promotion, but maintained that she was denied the promotion solely as a result of her gender and national origin. She alleged that during the meeting with the white male superior, who refused to recommend her for a promotion, he told her that her application would be an "embarrassment," and then he patted her on the back as she left and said, "it's okay Lulu."

The plaintiff refused to withdraw her application and was subjected to retaliatory conduct by the defendants, particularly when her courses were reduced. In addition, she was denied travel grants that she had applied for following the refusal to withdraw her promotion application. The plaintiff complained about the disparate treatment, and in retaliation, she alleged her request for promotion was denied. The plaintiff brought suit against the defendant, alleging that she was subjected to gender and race discrimination, resulting in an award of **$200,000 for emotional distress, $154,503 for back wages** and attorney fees. **<u>Since the Massachusetts Commission Against Discrimination presumes an inference of emotional distress in the event of discrimination, damages for such distress were awarded in addition to compensation for lost wages and a promotion to full professor, and required no evidence of the emotional distress.</u>**

*Tuli v. Brigham & Women's Hospital, et al.*, 656 F.3d 33 (1st Cir. 2011); 2009 Jury Verdicts LEXIS 420249

The plaintiff, an assistant professor at Harvard Medical School, complained for several years about discriminatory treatment by Mr. Day against women, frequently referring to them as "girls." The plaintiff filed a complaint against Day in 2006, but the hospital never sent the complaint to Human Resources for investigation. A year later, Day made a presentation on the plaintiff to the Medical Staff Credentials Committee. Dr. Tuli claimed that Day made defamatory statements about her to the committee and alleged that Day said "25 to 30 people in the operating room no longer wanted to work with Dr. Tuli."

Tuli filed suit and alleged that she was denied promotion, received disparate treatment with respect to pay (she was paid less than her male colleagues) and suffered retaliation. The trial lasted 25 days, the jury deliberated for 3.5 days and then awarded Dr. Tuli **$1.6 million in compensatory damages.**



*Dubin v. Board Madison Area Tech. Coll. Dist.*, **2011 WL 2133958 (W.D. Wis. May 4, 2011) (jury verdict)**

Jewish professor's contract was not renewed after he complained about anti-Semitic comments made by colleagues. The professor was awarded **$1 million for future lost earning capacity.**

*Haddad v. Wal-Mart Stores, Inc.*, **2007 MA JAS Pub. LEXIS 592**

The plaintiff, a woman, had worked as a pharmacist for the Defendant for over ten years. She was fired in 2004 for alleged gross misconduct with regard to theft or misappropriation of company assets, which she vehemently denied. In fact, just five days prior, the plaintiff alleged she was discriminated against in wages as compared to male pharmacy managers and then wrongfully terminated after demanding payment of wages equal to her male colleagues. She was awarded **$1 million in punitive damages** in addition to other compensatory damages for a total of **$1,972,774 plus statutory interest of 12% and attorney fees.**

*Graber v. Litton Guidance & Control Sys.*, **16 Trials Digest 3d 37, 1998 WL 1039030 (Cal.Superior) (Verdict and Settlement Summary)**

The plaintiff, a Jewish male employee, was subjected to discrimination and a hostile work environment, including racist jokes and comments made by his supervisors. The plaintiff worked at Litton Systems Inc., Litton Guidance & Control Systems, 'Reprographics' facility in Canoga Park from July 1985 until his constructive termination on October 25, 1994. Plaintiff alleged employment discrimination, retaliation, hostile work environment harassment and intentional infliction of emotional distress. He presented evidence to show that during the course of his employment, he was subjected to harassment and discrimination, including racist jokes and remarks made by his supervisors. The hostile work environment became so intolerable that plaintiff became psychologically disabled and unable to continue working at Litton on or about October 25, 1994. The jury awarded the plaintiff **$500,000 in emotional distress damages** and **$1.625 million in punitive damages.**



## Retaliation for Speaking Out against Issues/Discrimination

***Paul v. Asbury Automotive Group***, 3:06-cv-01603-KI (Oregon State Ct. 2008) (jury verdict)

Salesman was retaliated against and endured a hostile work environment because he opposed the discriminatory practices at the dealership. **$1.9 million compensatory damages, $2.75 punitives.**